**The ESTATE of Debe W. HUBBARD, The Merchants National Bank of Mobile, Executor, Petitioner,**

v.

**COMMISSIONER OF INTERNAL REVENUE, Respondent.**

No. 16497.

United States Court of Appeals
Fifth Circuit.
Dec. 6, 1957.

C. A. L. Johnstone, Jr., Mobile, Ala., McCorvey, Turner, Rogers, Johnstone & Adams, Mobile, Ala., of counsel, for petitioner.

Charles K. Rice., Asst. Atty. Gen., Lee A. Jackson, Atty., Washington, D. C., John N. Stull, Acting Asst. Atty. Gen., Joseph F. Goetten, Atty., Carolyn R. Just, Atty., Herman T. Reiling, Acting Chief Counsel, Int. Rev. Ser., Charles O. Johnson, Sp. Atty., Washington, D. C., Nelson P. Rose, Chief Counsel, Washington, D.C., for respondent.

Before RIVES, JONES and BROWN, Circuit Judges.

JONES, Circuit Judge.

Ashbel Hubbard and Emma Hubbard were divorced in 1919. Ashbel agreed that Emma should be paid $750 per month during her lifetime. To secure these payments he set up a trust of United States Government bonds of the face value of $100,000. The Merchants National Bank of Mobile, Alabama, was the trustee. It was provided that upon the death of Emma the bonds then in the possession of the trustee should be delivered to Ashbel, or his personal representatives. Ashbel then married Debe. He died in 1929. By his will he set up a testamentary trust and directed his trustee to pay monthly to Emma the $750.00 obligation he had incurred by the 1919 agreement. Debe dissented from the will. Emma filed a claim against the estate to secure the monthly payments which she was to receive. The Merchants National Bank was executor and trustee under Ashbel's will. The bonds in the trust appreciated in value so that by 1931 they were worth $106,-000.00. In that year the Circuit Court of Mobile County, Alabama, with the consent of Debe, entered a decree adding $94,000.00 from the estate of Ashbel to the bonds and directing that these assets be held by the Merchants National Bank, as trustee, to pay the $750.00 per month to Emma from income and using principal for such purpose if and to the extent income should be insufficient. Any excess of income was payable to Debe. Upon the death of Emma, the decree provides that the then remaining trust should be paid to Debe, her heirs and assigns. It was provided that sales and purchases of trust investments should be made only with the consent of Debe. The trust was set up by the trustee as of July 1, 1931.

In the following year, 1932, Debe transferred her present and future interest in the trust estate to the Merchants National Bank upon a further trust to pay to Debe all income less the amounts payable to Emma during Emma's lifetime. After Emma's death Debe was to receive all of the net income for her lifetime. Upon the death of Debe the trust was to continue, upon stated contingencies for the benefit of Debe's daughter, Stella Hubbard Wilson and the heirs of her body, with gifts over if Stella died without heirs of her body surviving. Debe died on September 23, 1949. Emma was then living. The property placed in trust under the Court decree did not, during any year after the trust was created, earn income in excess of the amounts necessary to make the payments to Emma. Encroachments upon principal to the extent of about $20,000.00 had been made prior to Debe's death for the purpose of making the required payments to Emma. The aggregate of the encroachments had reached nearly $40,000.00 by the end of 1954. In the estate tax return Debe's executor, the Merchants National Bank of Mobile, reported the 1932 trust transaction as a nontaxable transfer. The Commissioner determined that the transfer was includible in the taxable estate. The Tax Court agreed with the Commissioner on this issue. Estate of Hubbard v. Commissioner, 26 T.C. 183. Its decision is before us for review.

Much of the evidence before the Tax Court was documentary and was introduced by stipulation. This stipulation also provided that if the 1932 transfer

is includible as a part of the taxable estate it should "be included in her gross estate at a valuation of $132,461.-86". In the opinion of the Tax Court it is said that "Both factually and legally this proceeding arises against a complicated background". From the complicated factual background we turn to the complicated legal background.

May v. Heiner, 281 U.S. 238, 50 S.Ct. 286, 74 L.Ed. 826, 67 A.L.R. 1244, was decided in 1930. Mrs. May created a trust to pay income to her husband for life and then to her for life and then to distribute the trust corpus among four children. She died in the husband's lifetime. Her executors paid the estate tax deficiency which had been assessed upon the theory that the trust was included as a part of the estate for tax purposes. The Commissioner held the transfer was one "intended to take effect in possession or enjoyment at or after" death within Sec. 402(c) of the Revenue Act of 1918, 40 Stat. 1097. In holding the transfer was not taxable the Supreme Court said:

"The record fails clearly to disclose whether or no Mrs. May survived her husband. Apparently she did not. But this is not of special importance, since the refund should have been allowed in either event." 281 U.S. 238, 243, 50 S.Ct. 286, 287, 74 L.Ed. 826.

A year later the doctrine of May v. Heiner was applied where the donor of an inter vivos trust had reserved the income for life and was enjoying it at the time of his death. Burnet v. Northern Trust Co., 283 U.S. 782, 51 S.Ct. 342, 75 L.Ed. 1412; Morsman v. Burnet, 283 U.S. 783, 51 S.Ct. 343, 75 L.Ed. 1412. See also McCormick v. Burnet, 283 U.S. 784, 51 S.Ct. 343, 75 L.Ed. 1413. These decisions came down on March 2, 1931. On March 3, 1931, the Acting Secretary of the Treasury wrote the Speaker of the House of Representatives urging a congressional reversal of these decisions in order to prevent tax evasion. 74 Cong.Rec. 7078, 7198, 7199. On the same day both Houses of Congress passed

and the president signed the Joint Resolution of March 3, 1931, 46 Stat. 1516. By the Joint Resolution transfers were included for tax purposes where

"* * * the transferor has retained for his life or for any period not ending before his death (1) the possession or enjoyment of, or the income from, the property * * *".

At this juncture in the complicated legal background and on January 26, 1932, the transfer in trust here involved was made. The statute was further amended by Sec. 803(a) of the Revenue Act of 1932, 47 Stat. 169, 279, 26 U.S.C.A. § 811(c). This amendment changed the language added by the Joint Resolution so as to include in the estate for taxation property of which the decedent had made a transfer

"* * * under which he has retained for his life or for any period not ascertainable without reference to his death or for any period which does not in fact end before his death (1) the possession or enjoyment of, or the right to income from, the property * * *".

The 1932 amendment was not retroactive in effect and has no application to trusts created before its enactment. Hasset v. Welch, 303 U.S. 303, 58 S.Ct. 559, 82 L.Ed. 858; Commissioner v. Estate of Church, 335 U.S. 632, 69 S.Ct. 322, 93 L.Ed. 288, rehearing denied 336 U.S. 915, 69 S.Ct. 599, 93 L.Ed. 1079. In the Report of the Committee on Finance of the Senate, quoted in E.T. 5, C.B.XIII-2, 369, 370, the effect of the Joint Resolution and the purpose of the 1932 amendment are stated in this language:

"The purpose of this amendment to section 302(c) of the Revenue Act of 1926 is to clarify in certain respects the amendments made to that section by the joint resolution of March 3, 1931, which were adopted to render taxable a transfer under which the decedent reserved the income for his life. The joint resolution was designed to avoid the effect of decisions of the Supreme Court

holding such a transfer not taxable if irrevocable and not made in contemplation of death. Certain new matter has also been added, which is without retroactive effect.

"The Changes are:

\* \* \* \* \* \*

"(2) The insertion of the words 'or for any period which does not in fact end before his death,' which is to reach, for example, a transfer where decedent, 70 years old, reserves the income for an extended term of years and dies during the term, or where he is to have the income from and after the death of another person until his own death, and such other person predeceases him. This is a clarifying change and does not represent new matter."

Under the interpretation of the E.T. 5 Ruling, made in 1934, it was said that one of the objects to be accomplished by the 1932 amendment was to reach a transfer where the donors reserved income after the death of another who had died during the donor's lifetime but not to impose a tax on such a transfer where the first income beneficiary survived the donor. This administrative interpretation was abandoned in 1937 when a regulation was adopted stating that a transfer intended to take effect at or after death should include one where the donor-decedent's reservation of enjoyment was to be postponed until the termination of a transferred precedent interest. Reg. 80. § 18, 26 C.F.R. (1939) 648. Since the 1932 amendment is not to be given the effect of sweeping into the taxable estate a transfer made before its enactment, our decision should not be influenced by the 1937 Regulation. The cases which hold that such transfers are taxable involve trusts created subsequent to the 1932 amendment. As the Tax Court in the case before us points out, these decisions are subsequent to the 1932 amendment and are based, in part at least, upon the phrase "for any period not ascertainable without reference to his death". Commissioner v. Nathan's Estate, 7 Cir., 1947, 159 F.2d 546, certi-

orari denied 334 U.S. 843, 68 S.Ct. 1510, 92 L.Ed. 1767; Marks v. Higgins, 2d Cir., 1954, 213 F.2d 884; Estate of Guenzel v. Commissioner, 1957, 28 T.C. No. 10.

The Tax Court, in its opinion in this case, states that if Debe's only retained interest had been the reversionary life estate, it might be that the property would not be includible. The authorities cited to sustain this view are convincing. The Tax Court concludes, however, that the reservation by Debe of the net income in excess of the $9,000.00 per year payable to Emma during the life of Emma brought the trust within the provisions of the Joint Resolution and subjected it to inclusion in the gross estate. The Tax Court finds that the right of Debe to excess of income during the life of Emma was a valuable right. It so concludes because of the stipulation that the transfer in trust, if includible as a part of the gross estate, should be valued at $132,461.86. It reasons that because of this agreement as to value, some portion of the value belonged to the income interest of Debe during the life of Emma. We fail to see how the stipulation could give the interest a value or be treated as an admission that it had a value. The figure used in the stipulation as the valuation of the transfer is the same amount as that used by the Commissioner in his 90-day letter. The Tax Court was not advised as to the components of this aggregate sum nor are we. It does not appear whether any part of the amount used had been allocated to the initial income interest. The Tax Court concluded the interest had a value because the trust corpus started out with a worth of $200,000.00 and an annual yield of "only 4½ per cent" was required to produce Emma's $9,000.00. Since the payments were to be made monthly to Emma and investment income is ordinarily payable quarterly or semi-annually, and since the trustee was entitled to fees out of income as collected, a yield of slightly more than 4½ per cent would have been required to avoid encroachments upon principal and provide

some excess of income that could be paid to Debe.

The fact, as found by the Tax Court, that the trust has not "earned any income in excess of the amounts necessary to make the payments to Emma", is not, perhaps, a fact which should be ignored in determining whether the right to excess income during Emma's life had any value. Industrial Trust Co. v. Commissioner, 1 Cir., 1947, 165 F.2d 142, 1 A.L.R.2d 144; Hanley v. United States, 1945, 63 F.Supp. 73, 105 Ct.Cl. 638; Huntington National Bank v. Commissioner, 1949, 13 T.C. 760; Estate of Erma E. Green v. Commissioner, 1954, 22 T.C. 728. If we pass by the actual income earnings of the trust and use the basis as prescribed by Reg. 81.10(i), 26 C.F.R. (1949 Ed.) 16, the possibility, or rather impossibility, of Debe receiving any trust income during Emma's lifetime is not changed. We conclude that the determination of the Tax Court that there was value to the right of Debe to receive trust income during the lifetime of Emma was erroneous. We also conclude that such right was all form and no substance, and that the evidence showed it to be wholly without value.

With the taxability of the transfer dependant upon the reservation by Debe of the trust income for a period commencing with the death of Emma and ending with her own the basis for the inclusion must be found, if at all, in the Joint Resolution of March 3, 1931. Under May v. Heiner, supra, the transfer would not be taxed and the amendment of 1932 and subsequent enactments are not applicable. In May v. Heiner, supra, it was held that retention by a grantor of the income of a trust would not, without more, bring the trust property into the taxable estate of the donor upon his death. By the Joint Resolution this rule was changed with respect to trusts thereafter created. Was the trust created by Debe within the scope of the Joint Resolution as one in which she retained the enjoyment of income for her life or for any period not ending before her death? There was clearly no right reserved to Debe of income for her life, nor was there any right retained for a period not ending before her death. The phrase "for any period not ascertainable without reference to his death", included in the 1932 amendment was regarded by the Congressional Conference Committee as a change of substance. C.B. 1939–1 (Part 2) 496, 532. The Conference Committee, in reporting on the Technical Changes Act of 1949, 63 Stat. 891, interpreted the phrase "not ascertainable without reference to his death" as covering a situation such as we have before us where the right was to receive the income after the death of another who survived the donor. Report of Conference Committee on H.R. 5628, 81st Cong. 1st Sess. p. 5. Such has been the judicial construction. Marks v. Higgins, 2 Cir., 1954, 213 F.2d 884. Such is the effect of an earlier decision of the Tax Court. Such is a reasonable construction. Estate of Charles Curie, 1945, 4 T.C. 1175. We are therefore of the view that a transfer in trust made before the effective date of the 1932 amendment where the donor's right to income is postponed until the death of another who survived the donor is not to be included as a part of the donor's estate. The right to excess income above that payable to Emma being without any value, the property transferred is not subject to the estate tax.

The Tax Court had before it a question as to the amount of deductible executors' fees. This question was decided by the Tax Court for the petitioner and is not before us. Our only issue is the taxability of the trust created by the petitioner's testator. That issue we resolve in favor of the petitioner. The decision of the Tax Court is

Reversed.