HAYDEL v. HURCK *et al., Appellants.*

72 253
146 447

**Devise to Trustee for Support of Devisor's Brother:** DISCRETION IN TRUSTEE AS TO AMOUNT OF ALLOWANCE: TRUSTEE'S LIEN FOR ADVANCES. A testatrix devised her entire estate, consisting of realty, to a trustee with full power of sale. After directing what use the trustee should make of one-third of the estate, the will declared: "*Fourth,* Out of the proceeds, interest, rents, income or profits of the balance of my estate, my trustee shall, from time to time, pay over to my brother, J. W. R., such sum or sums of money as my brother may need for his support. Not knowing how much may be necessary for that purpose, I leave the amount entirely to the discretion of my said trustee, with the understanding that the aggregate shall not exceed the remaining two-thirds of the proceeds of my said estate, except in case the preceding clause of this, my last will and testament in favor of the children of my deceased sister, should become void: for in that case my said trustee may also employ that one-third for the support of my brother, should my said trustee deem it proper and expedient to do so." *Held,* that the trustee was not limited to the income for the support of J. W. R., but might if he saw fit, use the *corpus* of two-thirds of the estate; and that his discretion as to the amount, within the limit named, was absolute, and not to be controlled by any court. *Held,* also, that the trustee was entitled to a lien upon J. W. R.'s two-thirds interest for such sums as he advanced to J. W. R. before the property of the estate could be sold.

*Appeal from St. Louis Court of Appeals.*

REVERSED.

*Arba N. Crane, James Taussig* and *Charles S. Taussig* for appellants.

1.   Hurck had a right to employ the capital in the support of the. beneficiary; because there was no other means of support. *Robison v. Killey*, 30 Beav. 520; *Lowther v. Bentinck*, 44 L. J. Ch. (N. S.) 197. Besides, the authority is given by the will. (*a*) In express terms :   He is directed to pay such sums as he may deem necessary out of two-thirds of the " proceeds " of the estate, as well as from two-thirds of the income thereof.  " Proceeds " means, primarily, money obtained from the sale of a particular object or estate.    2 Burrell Law Dict., 832; *Belmont v. Ponvert*, 3 Jones & Sp. (N. Y.) 208 ; *s. c.*, 63 N. Y. 552; *Dow v. Hope Ins. Co.*, 1 Hall 166 ; *Dow v. Whetten*, 8 Wend. 160 ; *Haven v. Gray*, 12 Mass. 71.    (*b*)  By implication :  The first, third, fourth and sixth clauses clearly show that the testator intended to permit the use of the *corpus* of the estate, if the income did not prove sufficient.   *Reinders v. Koppelmann*, 68 Mo. 482.

2.   The amount to be allowed John W. Rice (not exceeding two-thirds of the estate), being left to the uncontrollable   discretion  of  the  trustee,  the  court  will  not interfere, there being no evidence of fraud.   2 Perry on Trusts, § 510; Hill on Trustees, s. p. 437, and cases cited ; Hill on Trustees, s. p. 494; *Nichols v. Eaton*, 91 U. S. 724 ; *In re Wilkes*, 7 Eng. L. & Eq. 84, 85.

3.   The trustee had the legal right to advance his own moneys to John W. Rice, having no moneys of the trust estate in his hands, and he or his representative is entitled to be reimbursed from the trust estate.   2 Perry on Trusts, § 485; *Iredell v. Langston*, 1 Devereux Eq. 392; *Balsh v. Hyham*, 2 P. Williams 453.

4.   The *cestui que trust* cannot compel the trustee to convey until the demands of the latter against the estate are satisfied.   *Jones v. Dawson*, 19 Ala. 672 ; *Marray v. De Rottenham*, 6 Johns Ch. 52 ; *Noyes v. Blakeman*, 6 N. Y. 567 ; *King v. Cushman*, 41 Ill. 31 ; *Robles v. Clarke*, 25 Cal. 317 ; *Morton v. Adams*, 1 Strobh. Eq. 62.

5. The trustee is entitled to be allowed for advances to the same extent as the chancellor would have originally authorized, had he been applied to. Perry on Trusts, § 915; *Williams v. Smith,* 10 R. I. 280; *In re Bostwick,* 4 Johns. Ch. 100; *Williamson v. Berry,* 8 How. 555, 556; *Otte v. Becton,* 55 Mo. 100.

*E. T. Farish* for respondents.

The word proceeds, as employd in the will, is synonymous with the other words employed, and means the product of the estate and nothing more. To uphold the interpretation contended for by defendants, we are driven to the absurd proposition that the testatrix intended that her trustee might turn over the whole two-thirds of the balance of the estate to John W. Rice; the object of appointing a trustee at all was to prevent John from having control of the property, or applying, as he saw fit, the principal to his own uses, and to carve out a support for him from the product of the two-thirds of the estate; any other interpretation would defeat the whole object, purpose and intent of the will. By the will, if John marry and die, leaving issue him surviving, then the trustee should hold all the above balance of the testatrix's estate in trust for such child or children. What becomes of this provision, if the balance (which is the share or shares, the use or product of which John was to have), might be entirely consumed, and capital and all divested by trustees for the wasteful extravagance of John? The construction contended for by defendants is, that as to two-thirds of the estate, John was the sole beneficiary; the subsequent devisees are entirely lost sight of and defeated

NAPTON, J.—This is a controversy between the representatives of Peter J. Hurck, deceased, and certain beneficiaries under the will of Rose D. Rice. The will of Rose D. Rice made in 1869, bequeathed to Peter J. Hurck her

entire estate, with power to sell, mortgage or otherwise dispose of it, as said Hurck might think proper. After requiring said Hurck to pay her debts and to erect a monument in Calvary cemetery, she required her trustee to hold one-third of her estate for the benefit of the children of her sister. The fourth clause of her will is thus: " Out of the proceeds, interest, rents, income or 'profits of the balance of my estate, my trustee shall, from time to time, pay over to my brother, John W. Rice, such sum or sums of money as my brother may need for his support. Not knowing how much may be necessary for that purpose, I leave the amount entirely to the discretion of my said trustee, with the understanding that the aggregate shall not exceed the remaining two-thirds of the proceeds of my estate, except in case the preceding clause of this, my last will and testament in favor of the children of my deceased sister, Ann, should become void, for in that case, my said trustee may also employ that one-third for the support of my brother should my said trustee deem it proper and expedient to do so. Should my said brother, John, marry and die, leaving issue him surviving, then my trustee' shall hold all the above balance of my estate in trust for such child or children of John, share and share alike, and may convey the same to them in equal shares, or some trustee, for their sole use and benefit." The sixth clause of her will bequeathed to the Roman Catholic Asylum of St. Louis, as residuary legatees of her will.

It appeared from the testimony that the estate of the testatrix consisted of an interest in the Everett House in St. Louis, of three-fourths, said property being estimated from $100,000 to $125,000, and other lots in St. Louis estimated at from $6,000 to $10,000. The trustee, it appears, advanced to John W. Rice from 1869 to 1875, when this proceeding was commenced, $23,743, from his own money, for the support of said Rice, and Hurck being dead, his representatives claim a lien on the Rice estate for this money. Witnesses differed as to what would be a reason-

able sum for the support of said John W. Rice, who was a young man of education and who had no other means except that derived from his sister's will. Some thought that $1,200 a year was sufficient, and others that, considering his social position and his expectations, $4,000 or $5,000 a year was not unreasonable. At all events, the fact was that the trustee, Hurck, advanced to him nearly $4,000 a year. The circuit court decreed that these advances of the trustee were a charge and lien on the trust estate. The court of appeals reversed this decree, upon the ground that the trustee had no authority to use the *corpus* of the estate, but only its income, and at all events that the sums advanced were extravagant and unreasonable and encroached on the rights of the residuary legatee.

It is evident in this case that her brother's support was a leading object of the testatrix. This was to be made "out of the proceeds, interest, rents, income or profits" of her estate. The aggregate was not, however, to exceed the two-thirds of her estate, except the one-third bequeathed to the children of her sister should become void. The only question, so far as we can perceive, is, whether this will confined the trustee, Hurck, to the rents or income of the property, or authorized him to use the entire two-thirds of the estate, if he saw fit to do so, in the support of John W. Rice, and we think the latter was the intention of the testatrix. Hurck was authorized to sell the entire property, which was real estate, and out of the proceeds to apply whatever he saw fit to the brother's use. The object of the sister was to place her friend Hurck in precisely the situation she herself would have been in if she had lived, the only limitation being that expenditures were not to exceed two-thirds of the property or its proceeds; and as she would have expended the estate upon her brother, Hurck, her trustee, had the same power.

The case of *Lee v. Brown*, 4 Ves. Ch. 362, is relied on as maintaining a contrary doctrine, but the cases are not alike. In that case the testatrix gave to her brothers, Wm.

17—72

and Ed. Brown, the sum of £200 upon trust, to place the same out at interest during the minority of her nephew, John Lee, and to apply the interest and produce thereof for and toward the maintenance and education of said nephew, and when he should attain the age of twenty-one, then to pay or otherwise transfer the said sum of £200 to him. The trustees paid out this entire £200 during John Lee's minority, and doubtless very beneficially to him, and the chancellor hesitated, but finally concluded that the trustees had no power to use the principal even for a purpose decidedly advantageous to the boy, and, therefore, held the estate of the trustees responsible for its return. The bequest in that case was of a sum of money to be placed at interest, and the interest was only allowed to be used during the minority of the beneficiary; but in the present case the devise was of real estate, all of which the trustee was to sell, if he thought proper, and to apply two-thirds of the proceeds to the annual maintenance of the beneficiary.

As to the extravagance of the annual allowance, it may be conceded, and that it was unwise, we think probable, but the testatrix did not submit that to the review of any court, but left it entirely to the discretion of Mr. Hurck. The trustee endeavored to sell the property, but was unable to get an offer satisfactory to other joint owners, and, therefore, had to advance the beneficiary out of his means, and this the circuit court decided should be allowed out of the estate. We think the decree was right, and the judgment of the court of appeals is reversed, and that of the circuit court affirmed. The other judges concur.