### In re Estate of Fanny Sicher COHN, deceased.
### Lillian FRIEDMANN and Warren S. Davidson, Plaintiffs-Appellants,
### v.
### UNITED STATES of America, Defendant-Appellee.
### No. 232, Docket 30718.

United States Court of Appeals Second Circuit.
Argued Dec. 5, 1966.
Decided Jan. 19, 1967.

George B. Levy, New York City (Davidson, Sicher & Levy, New York City, on the brief), for appellants.

Grant B. Hering, New York City (Robert M. Morgenthau, U. S. Atty., for the Southern District of New York, Samuel M. Eisenstat, Asst. U. S. Atty., Loring Post, Attorney, Department of Justice, on the brief), for appellee.

Before LUMBARD, Chief Judge, and HAYS and FEINBERG, Circuit Judges.

HAYS, Circuit Judge:

This is an appeal from a decision of the United States District Court for the Southern District of New York which held that a certain trust established by the decedent in 1930 was includable in decedent's gross estate for purposes of the Federal Estate Tax. We affirm the decision.

The provisions of the Deed of Trust which are relevant here provided that decedent was to receive the income from the trust and that she had the right to revoke or modify the trust in whole or in part, with the approval of certain named individuals.

Decedent died in 1960. Her retention of the power to modify or revoke the *inter vivos* trust brings the trust within the provisions of Section 2038 of the Internal Revenue Code of 1954.[1] The re-

---

1. § 2038. Revocable transfers.

(a) In general.

The value of the gross estate shall include the value of all property.

(1) Transfers after June 22, 1936.

To the extent of any interest therein of which the decedent has at any time made a transfer (except in case of a bona fide sale for an adequate and full consideration in money or money's worth), by trust or otherwise, where the enjoyment thereof was subject at the date of his death to any change through the exercise of a power (in whatever capacity exercisable) by the decedent alone or by the decedent in conjunction with any other person (without regard to when or from what source the decedent acquired such power), to alter, amend, revoke, or terminate, or where any such power is relinquished in contemplation of decedent's death.

(2) Transfers on or before June 22, 1936.

To the extent of any interest therein of which the decedent has at any time made a transfer (except in case of a bona fide sale for an adequate and full consideration in money or money's worth), by trust or otherwise, where the enjoyment thereof was subject at the date of his death to any change through the exercise of a power, either by the decedent alone or in conjunction with any person, to alter, amend, or revoke, or where the decedent relinquished any such power in contemplation of his death. Except in the case of transfers made after June 22, 1936, no interest of the decedent of which he has made a transfer shall be included in the gross estate under paragraph (1) unless it is includable under this paragraph.

(b) Date of existence of power.

For purposes of this section, the power to alter, amend, revoke, or terminate shall be considered to exist on the date of the decedent's death even though

**644**

tention of that power is also a retention of the "possession and enjoyment" of the property under Section 2036(a) of the 1954 Code.[2] Appellants argue, however, that taxation is precluded by the limitation provision of Section 2036(b):

(b) LIMITATION ON APPLICATION OF GENERAL RULE.

This section shall not apply to a transfer made before March 4, 1931; nor to a transfer made after March 3, 1931, and before June 7, 1932, unless the property transferred would have been includable in the decedent's gross estate by reason of the amendatory language of the joint resolution of March 3, 1931 (46 Stat. 1516).

The "transfer" was made in 1930, that is to say the trust was created before March 4, 1931 and therefore comes within the terms of Subdivision (b) of Section 2036.

If we read Section 2036 alone, without regard to its history and without regard to Section 2038, it appears that neither the reservation to the donor of the income nor of the power "to designate the persons who shall possess or enjoy the property" will have the effect of making the present trust taxable.

But the true significance of Section 2036 is revealed only in the light of its history.

Section 2036(a) directly derives from the Joint Resolution of March 3, 1931 (c. 454, 46 Stat. 1516). The reasons for which that Resolution was adopted and the circumstances of its adoption are set forth in some detail in Commissioner v. Estate of Arents, 297 F.2d 894 (2d Cir.), cert. denied, 369 U.S. 848, 82 S. Ct. 932, 8 L.Ed.2d 9 (1962) and we need not repeat that material here. It is sufficient to say that the occasion for the Resolution was a series of cases decided by the Supreme Court in which it was held that trusts were not taxable to the estates of the trustors by reason of reservation to the trustors of the trust income.[3] The Joint Resolution was rushed through Congress and signed by the President for the purpose, and only for the purpose, of repairing that leak in the dike.

The Resolution, however, did contain the language, still found in its successor Section 2036, concerning reservation of the power to designate the persons who were to enjoy the property. And, just as it is true under the 1954 Code that the language is unnecessary in Section

---

the exercise of the power is subject to a precedent giving of notice or even though the alteration, amendment, revocation, or termination takes effect only on the expiration of a stated period after the exercise of the power, whether or not on or before the date of the decedent's death notice has been given or the power has been exercised. In such cases proper adjustment shall be made representing the interests which would have been excluded from the power if the decedent had lived, and for such purpose, if the notice has not been given or the power has not been exercised on or before the date of his death, such notice shall be considered to have been given, or the power exercised, on the date of his death.

2. § 2036. Transfers with retained life estate.
(a) General rule.
The value of the gross estate shall include the value of all property to the extent of any interest therein of which

the decedent has at any time made a transfer (except in case of a bona fide sale for an adequate and full consideration in money or money's worth), by trust or otherwise, under which he has retained for his life or for any period not ascertainable without reference to his death or for any period which does not in fact end before his death—
(1) the possession or enjoyment of, or the right to the income from, the property, or
(2) the right, either alone or in conjunction with any person, to designate the persons who shall possess or enjoy the property or the income therefrom.

3. May v. Heiner, 281 U.S. 238, 50 S.Ct. 286, 74 L.Ed. 826 (1930); Burnet v. Northern Trust Co., 283 U.S. 782, 51 S.Ct. 342, 75 L.Ed. 1412 (1931); McCormick v. Burnet, 283 U.S. 784, 51 S.Ct. 343, 75 L.Ed. 1413 (1931); Morsman v. Burnet, 283 U.S. 783, 51 S.Ct. 343, 75 L.Ed. 1412 (1931).

2036 because the situation envisaged is fully covered by Section 2038, so it was unnecessary in the Joint Resolution because the situation was already fully covered by Section 302(d) of the Internal Revenue Code of 1924 which is the direct ancestor of Section 2038.

No harm was done by the fact that Section 302(c), the section amended by the Joint Resolution, in effect repeated the same requirement as was already contained in Section 302(d). The important part of Section 302(c), that which made trusts taxable where the donors retained an interest in the income, sufficiently filled the loophole created by the Supreme Court cases. Where the donor retained the right to dispose of the remainder the trust had always (since 1924) been taxable under Section 302(d). It made no difference that it was now also taxable under Section 302(c).

In 1949, however, the Supreme Court overruled the decisions which had led to the adoption of the Joint Resolution and held that, even in the absence of the Joint Resolution, trusts in which the donor retained a life interest were taxable.[4] The effect of this decision was to make such trusts taxable though they had been set up before the adoption of the Joint Resolution (the Joint Resolution had been held to be only prospective in application[5]). In order to correct this situation and to protect donors of trusts who had acted before March 4, 1931 in reliance on the then applicable decisions of the Supreme Court, Congress adopted a statute in the form of the present Section 2036, that is, a statute containing not only the substance of the Joint Resolution, but an express exception for trusts created before March 4, 1931. The exception was appropriate and intended as far as concerns trusts in which income was reserved to the donor. But the statute had the apparent effect of providing an exception with respect to trusts in which the right to change the ultimate recipient of the property was retained.

That this effect was unintended is indicated not only by the legislative history[6] but also by the fact that the predecessor of Section 2038 remained unchanged and continued to provide for taxability as it had before and after 1931.

Appellants would have us read into the exception of Section 2036 (the effect of which is confined to that Section by the express language of Section 2036(b)) an exception to Section 2038. To read Section 2036(b) in this way would be to provide for pre-1931 trusts an exception to taxability which did not exist at the time that the trusts were created. Appellant suggests no reason why Congress in 1949 should have wanted thus to except pre-1931 trusts and we can think of none. They were excepted from the income retention provision because they were drawn at a time when reliance on the Supreme Court decisions would have made such retention acceptable. But the retention of power to change the disposition of the corpus was not justified by reliance on any Supreme Court decisions and resulted in taxability by the clear provisions of the then existing statute.

If there is a conflict between Section 2038 and Section 2036 we cannot read Section 2036 as providing an exception to Section 2038 and on the basis of logic and reason as well as legislative history we must read Section 2038 as prevailing in this respect over Section 2036.

We are strengthened in our conclusion by the decision of the Third Circuit in Florida National Bank v. United States,

4. Commissioner v. Estate of Church, 335 U.S. 632, 69 S.Ct. 322, 93 L.Ed. 288 (1949).

5. Hassett v. Welch, 303 U.S. 303, 58 S.Ct. 559, 82 L.Ed. 858 (1938).

6. See Senate Report No. 831, 81st Cong., 1st Sess., 1949–2 Cum.Bull. 289, 294; House Conference Report No. 1412, 81st Cong., 1st Sess., 1949–2, Cum.Bull. 295, 297.

**646**

336 F.2d 598 (3d Cir. 1964), cert. denied, 380 U.S. 911, 85 S.Ct. 895, 13 L.Ed.2d 797 (1965), where the court reached the same result by slightly different reasoning.

Affirmed.